SHEA, INDIVIDUALLY AND AS TRUSTEE *v.*
MARTON ET AL.

[No. 53, September Term, 1957.]

*Decided November 19, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*David A. McNamee,* with whom were *W. Carroll Beatty* and *Beatty & McNamee* on the brief, for the appellant.

*Arthur C. Keefer,* with whom was *Grover Lee Small* on the brief, for the complainants-appellees.

*Nicholas Orem, Jr.,* with whom were *T. Howard Duckett* and *Duckett, Gill & Orem* on the brief, for Mr. Williams, appellee.

PRESCOTT, J., delivered the opinion of the Court.

A decree of the Circuit Court for Prince George's County held, *inter alia:* that a contract dated December 14, 1954, between the appellant and certain of the appellees "is and was null and void" on and after May 14, 1955; that the cross-bill filed by the appellant against the appellees be dismissed; and that the appellees, Louise L. Marton and Helene L. Granbery pay one-half of the costs below and the appellant the other one-half. From this decree, the appellant has appealed.

On December 14, 1954, the appellant and the appellees, Louise L. Marton and Helene L. Granbery, entered into a written contract concerning certain property owned by these appellees. This contract stated in substance that in consideration of mutual promises the parties agree as follows: that the purchase price of the property is $100,000; that the buyer agrees to deposit $5,000 in escrow, which in the event of

favorable rezoning would constitute part payment of the purchase price; and that the buyer shall take immediate steps to prepare and file the application for rezoning. This brings us to paragraph five of the contract, and, as it and paragraphs 7 and 18 control the decision of this suit, they will be set forth together and partly *verbatim*. Paragraph five, in part, states:

> "5. That a maximum of five months from the date of execution of this purchase agreement shall be permitted the Buyer for determination in respect of such rezoning, and in the event the application for rezoning is denied, the Buyer shall be allowed two months additional within which to apply for rehearing and appeal to the Board of Zoning Appeals."

Paragraph 7, in full and paragraph 18, in part, read:

> "7. That in the event the zoning authorities, after appeal to the Board of Zoning Appeals, shall deny the aforesaid application, then the aforesaid escrow agents are authorized to return said $5,000 deposit to the Buyer, no further liability of any character whatsoever shall attach to either Sellers or Buyer, and the terms and conditions of this agreement shall cease and determine."

> "18. That if final and favorable zoning as aforesaid is obtained, then within four months from the date thereof the Sellers and Buyer are required and hereby agree to make full settlement in accordance with the terms hereof."

The contract, by its other terms, provided how the balance of the purchase money was to be paid in the event of favorable rezoning and the manner of settlement, *etc.*

Shortly after the signing of the contract, an application for the rezoning of the property was filed with the Maryland-National Capital Park and Planning Commission (Commission). From that time until about December, 1955, the application remained with the Commission without action being taken thereon. During all of this time, the application received only perfunctory attention from the appellant, whose

duty it was to obtain the rezoning within five months after December 14, 1954, if the terms of the contract were to be finally consummated. On two occasions after May 14, 1955, (five months after the signing of the contract) the appellant requested the owners of the property to extend the time for obtaining the rezoning named in the contract, which they refused to do. Also after May 14, 1955, there were several telephone conversations and conferences between the appellant and Walcroft, the real estate broker who had brought the owners and the appellant together, and the owners and a Mr. Lee, a relative of, and advisor to, the owners.

Sometime in September, 1955, Mr. Pope, a real estate broker representing Albert V. Williams, one of the appellees, called Mr. Walcroft relative to the purchase of the property involved herein. Mr. Walcroft introduced Mr. Pope to Mr. Shea and negotiations were had between them which, if consummated, would have called for a purchase price of $140,000. Williams thereafter entered into negotiations with the owners of the property, Marton and Granbery, and, on October 18, 1955, signed a contract with them for the purchase of the property for $120,000.

On May 24, 1956, the owners of the property filed a suit against Mr. Williams and Mr. Shea. This suit prayed for specific performance of the contract with Williams, and a decree declaring the owners' contract with Shea null and void. Shea filed a cross-bill asking for specific performance of his contract with the owners, and money damages against Williams for the tortious interference with his contract. The court below, by its decree, granted the relief requested in the original bill and dismissed the cross-bill, from which decree Shea has appealed.

The learned and experienced trial judge decided that it was implicit in the contract that the property was not worth $100,000 unless it were rezoned; that the contract was an agreement between the owners and Shea, under which he was to have the right to acquire the property, contingent upon the rezoning thereof within five months; that it was certain there was no obligation on the part of Shea to procure the rezoning, and, if he failed to do so, he was under no circum-

stances liable to the owners; that to this extent, at least, the contract was unilateral; that time was of the essence of the contract, and, when the five months' period allowed for the rezoning ran out, the contract was at an end.

We agree. We think our recent ruling in *Clarke v. Lacy*, 213 Md. 482, 491, 132 A. 2d 478, is controlling. In that suit, the contract was similar in many respects to the present one. This Court, speaking through Judge Hammond, said:

> "The chancellor construed the contract of July 20, 1953, as, in substance and effect, a unilateral contract which the Clarkes purchased. They had no obligations other than to pay certain taxes, and to make efforts to find tenants or to sell to governmental bodies. They did not covenant that they would find a tenant or procure sales. They were given the option, for a stated period, of producing certain results and if they did produce, their reward was earned. We think that the chancellor's reading of the contract was accurate and that it is to be considered and construed as unilateral and in the nature of an option. * * * In such a case, time is of the essence as a matter of law."

In the present suit, the only obligation Shea had was to file an application for rezoning, and, when it was not granted within five months, he had no further obligation whatsoever. There was nothing in the contract to give it force and operative effect beyond that time. He did not covenant that he would procure the rezoning. He was, in effect, given an option, for a definite period, namely, five months, and, if he did obtain the rezoning within that period, he was to have the property at the price named. He failed to procure the rezoning. We think the chancellor's construction of the contract was correct, and it is to be considered, as was done in the *Clarke* case, as unilateral and in the nature of an option. In such a case, time is of the essence as a matter of law, *Clarke v. Lacy, supra,* and, when the five months' period expired without the rezoning, the contract was at an end.

But the appellant further contends that the time limit for

obtaining the rezoning was waived by the owners of the property, and that they were estopped by their conduct from denying him the privilege of carrying out the provisions of the contract. With reference to this, the chancellor said:

> "There has been some testimony offered on behalf of Mr. Shea in which it was sought to demonstrate that there had been an enlargement of that time by reason of the circumstances under which the parties dealt, or perhaps that by reason of their conduct, that is, the conduct of the owners of the property, they were estopped from denying him the right to proceed with the contract. The Court is not persuaded that that is a fact. The most that they did, that is, the owners did, was to go to the real estate man's office and interview him. The substance of that interview is somewhat contradictory by the respective groups of witnesses, but it seems perfectly clear from the owners of the property that there was no intention on their part at the conference to hold open this contract for future consideration."

These contentions involve questions of fact. The chancellor had an opportunity to see and hear the witnesses and to evaluate their testimony. From a reading of the testimony, we are unable to determine that his conclusion was clearly erroneous. Maryland Rule 886 a.

The appellant finally contends that the chancellor committed reversible error by excluding from evidence a conversation between Mr. Lee and Mr. Shea. It was offered on the theory that Lee was the agent of the owners and his statements were binding upon them. The chancellor specifically found that the agency had not been established. We find no error in this ruling.

*Decree affirmed with costs.*