## COOPERSMITH *v.* ISHERWOOD ET UX.

[No. 152, September Term, 1958.]

*Decided April 14, 1959.*

458

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*John P. Moore,* with whom were *Moore & Linowes* on the brief, for the appellant.

*James R. Miller, Sr.,* with whom were *Miller & Miller* on the brief, for the appellee Ruth K. Isherwood.

No brief or appearance for the appellee Arthur M. Isherwood.

KEATING, J., by special assignment, delivered the opinion of the Court.

On July 29, 1958, the Circuit Court for Montgomery County entered its decree dismissing appellant's bill of complaint for specific performance of a written contract for the sale of certain real estate and granting summary judgment in favor of the appellees. Appellant contends that the chancellor erred in (1) granting summary relief to appellees (defendants below) because there was a genuine dispute as to material facts and (2) denying appellant's prayer for specific performance because the undisputed facts shown in the bill, answer and the affidavit filed by appellant in opposition to appellees' motion for summary judgment entitled him to the relief prayed.

On or about July 30, 1956, appellant, a real estate man and developer, as buyer, and the appellees, husband and wife, owners of a 41 acre tract of unimproved farm land in Montgomery County signed a written instrument purporting to be a contract of sale prepared on a printed form by another real estate broker (Ruppert). The instrument called for the sale of the tract to appellant for $30,000, of which $10,000 (including the $500 deposit) was to be paid in cash and $20,000 was to be secured by "First Deed of Trust" on certain terms. The instrument also provided that the brokerage commissions on the transaction were to be paid to Ruppert

by the purchaser. At the end of the printed form the draftsman, knowing of his client's intention to apply for rezoning, but apparently, so far as the record shows, without consultation with or instructions from any of the parties, inserted the following provisions:

> "It is further understood and agreed, That the purchaser shall at his expense, and as soon as possible after the execution of this contract apply for a rezoning for commercial purposes of a part of the above mentioned premises.
>
> In the event that this property is not rezoned to the satisfaction of the purchaser on or before January 1, 1957, then this contract may be declared null and void by either party and the deposit stated herein will be refunded to the purchaser."

And, as so frequently happens under such circumstances, this inartificially drawn proviso brought the parties first to the Circuit Court and then here to settle their differences, arising from the following chain of events:

Appellant, about October 16, 1956, applied for rezoning of 3.87 acres of the 41 acre tract, having previously had it surveyed, and on or about December 28, 1956, appellant sent a letter to his agent, Ruppert, in Washington reading: "This letter is notice that the contract of purchase dated 7-30-56 of the Isherwood property on Olney-Laytonsville Rd. and Muncaster Rd. will be exercised according to the provision that notice be given before January 31st, 1957. I therefore direct you to give such notice effective December 31st, 1956. Title will be ordered at the Realty Title Co. 1424 K St., N. W." An examination of the contract fails to disclose any provision about giving notice before January 31, 1957, or any other date. On the same day (December 28, 1956) Ruppert delivered the above letter to appellees and at the same time advised them that the rezoning had not been obtained as of that date. It is significant to note here that the record is silent as to whether appellant disclosed to appellees his future intentions as to rezoning.

Between January 15, 1957, and February 26, 1957, ap-

pellant consulted zoning counsel and upon advice applied for permission to withdraw his application for rezoning of the 3.87 acre lot. Withdrawal privilege was granted on February 26, 1957, with prejudice. According to appellant's affidavit several times between January 15, 1957, and March 4, 1957, appellant "asked the agent, Milton F. Ruppert, to consider certain modifications of the sales agreement * * *. The defendants declined to accept any of these suggestions, and insisted that the terms of the contract remain unchanged."

Between February 1, 1957, and March 1, 1957, Ruppert had several conversations with Mrs. Isherwood (Mr. Isherwood being ill) relative to the title papers being prepared. He advised her on February 19, 1957, that settlement would be made on March 4, 1957. On each occasion she referred him to other people, who were either friends or advisors, as she was unfamiliar with such matters. One of these on March 1, 1957, advised Ruppert that he should see Mr. Miller, an attorney in Rockville, who was handling the matter for the appellees. Appellees did not appear for settlement and thereafter declined to settle; and on or about March 15, 1957, their counsel advised the appellant that, because of failure to rezone, the appellees would not perform. On March 22, 1957, he sent to appellant a check of Mrs. Isherwood's for refund of the $500.00 deposit which appellant refused to accept and returned, and he thereupon brought suit.

Before determining whether or not the alleged contract can be specifically enforced we must first construe the instrument itself. The general principle in the construction or interpretation of contracts that the intention of the parties must be gathered from the contents, phraseology, and words of the document itself, unless there is some ambiguity in its language, is too elementary to need citation of authority. Only when the language or words, used in their ordinary sense, are vague, doubtful or have two meanings, may extrinsic evidence be used to determine the intention of the parties.

Applying this principle to the instrument here involved we believe there is no ambiguity needing explanation. The language, either by itself or read in context, means simply what

it says: "In the event this property is not rezoned to the satisfaction of the purchaser on or before January 1, 1957, then this contract may be declared null and void by either party * * *." While the rights and liabilities of the parties thereunder, being matters of law, may need some explanation because of the nature of the transaction and the facts which later developed, the intention of the parties on or about July 30, 1956, when they signed the instrument was clear. Each party reserved the right, without acquiescence or leave of the other party, to declare the contract null and void at any time after January 1, 1957, if by that time the property had not been rezoned to the satisfaction of the purchaser. While it is apparent that the extent and nature of the rezoning was to be satisfactory to the purchaser, the fact of its accomplishment was not, and if there should be no rezoning at all by January 1, 1957, *either party* could declare the contract null and void. Thus, no rezoning having been accomplished by that date, thereafter either of the parties could, within a reasonable time, have acted independently of the other party.

This is an executory contract, voidable at the option of either party. It was not absolutely void after January 1, 1957, because it required some action on the part of one party or the other to rescind it. A voidable contract is defined in Restatement, *Contracts,* § 13 as one "where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract; * * *." Comment (e) states that:

> "Where both parties have a power of avoidance the propriety of calling the transaction a voidable contract rather than calling the transaction void, is due to the fact that action is necessary in order to prevent the contract from producing the ordinary legal consequences of a contract; and often this action in order to be effectual must be taken promptly. Moreover, ratification by either party may terminate his power of avoidance."

In 12 Am. Jur. *Contracts,* § 434, it is said:

> "The assent of both parties to a rescission is some-

times expressed in the original contract, as where an option to rescind is given to one or both of the parties."

In section 447 under the same title, it is said:

"A right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises; it may be waived by continuing to treat the contract as a subsisting obligation. The general rule is that the right to rescind must be exercised within a reasonable time, although there is authority to the effect that the mere question of how much time a party to a contract has permitted to elapse is not necessarily determinative of the right to rescind, the important consideration being whether the period has been long enough to result in prejudice to the other party."

Numerous cases in other jurisdictions are therein cited as authority for this principle.

The chancellor rested his decision on *Clarke v. Lacy,* 213 Md. 482, and *Shea v. Marton,* 214 Md. 539. While we arrive at the same conclusion—that the contract should not be specifically enforced—and recognize that the principles of law therein enunciated are partially applicable, we do not find that the situations in those cases are similar to the situation here. There the contracts were held to be unilateral contracts in the nature of options in which time was of the essence. Here the contract provided that "[i]t is further understood and agreed, that the purchaser shall at his expense, and as soon as possible after the execution of this contract apply for a rezoning for commercial purposes of a part of the above mentioned premises." This is a covenant to do a specific thing, namely, make an application. There is no contention that the appellant did not do so as soon as possible. That part of the contract was therefore not optional and had been performed. The following clause of the contract which says "[i]n the event that this property is not rezoned to the satisfaction of the purchaser on or before January 1st, 1957, then

this contract may be declared null and void by either party * * *" was unilateral, but only to the extent that appellant could decide whether the rezoning was satisfactory to him and there was an option to rescind which arose on the happening of a condition, *i.e.*, a failure to rezone by January 1, 1957. The option to rescind thereafter was held by either party and, as the time within which notice of cancellation or rescission should be given was not definitely specified, notice would have to be given as above stated [12 Am. Jur., *op. cit. supra*, § 447], within a reasonable time.

Appellant contends that because the contract provides that he, as buyer, was the one to make application for rezoning and that same was to be done to his satisfaction, the contract should be interpreted as giving him the sole right of cancellation. We find no merit in this contention. To agree would be to completely ignore the language itself. Appellant offers certain statements of his own and that of his agent Ruppert, in their affidavits, concerning the *reasons* he had for wanting to rezone a part of the property and the *reasons* for wanting an option of cancellation on his part. The reasons or motives of the parties for making contracts may be inquired into if the language is not clear, in order to determine the intention of the parties, but not to distort the meaning of clear language. The appellees may have had one or more good or bad reasons for saying that "either party" might declare the contract null and void. There were no allegations or admissions of mistake in the employment of that language, and therefore we must assume the parties intended it to mean what it says. *Ray v. Eurice,* 201 Md. 115. See also *Insley v. Myers,* 192 Md. 292.

As we hold the contract to have been voidable by the appellees after January 1, 1957, did they, within a reasonable time thereafter, notify appellant of the cancellation, and was he prejudiced by their action? In this connection it is necessary to inquire into the facts as disclosed by the record. They show no change whatever in the appellant's position after January 1, 1957, except his voluntary withdrawal of the zoning application and some possible expense for title

papers ordered by him. On the other hand the facts show that appellees remained non-committal as to cancellation, refused to settle, notified appellant through their counsel of such refusal on March 15th, and returned appellant's deposit with a letter of cancellation on March 22nd.

The record shows that the date upon which rezoning became impossible was February 26, 1957, when the appellant's request for withdrawal was granted. The record fails to show when the appellees learned of this action but they refused on March 4th to attend a settlement, the date for which had been fixed solely by the appellant. We find nothing in the record to indicate that after January 1, 1957, and before March 4th, appellees either expressly or impliedly waived any rights under the contract. They might well have been awaiting the outcome of appellant's rezoning efforts, the futility of which could not have become finally apparent until February 26th and possibly did not so become until sometime later. We think that the refusal to settle on March 4th, the verbal notification on March 15th, and the formal letter of cancellation with return of deposit on March 22nd was not an unreasonable delay and that the appellant was not prejudiced thereby.

The appellant contends that the chancellor erred in granting appellees' motion for summary judgment which was not supported by affidavit and claims that the pleadings and his own affidavits filed in opposition to appellees' motion disclosed a genuine dispute as to material facts. We find no dispute as to facts at all. If we assume, as the chancellor did, all of the material facts supplied by the appellant (plaintiff) to be true (and they were virtually admitted by the appellees' answer, without supporting affidavit), we find that the only dispute is as to the legal effect of such facts.

There were no extrinsic facts necessary to prove the meaning of the contract, and the undisputed facts which related to the questions of cancellation, waiver and estoppel, failed to show either waiver or estoppel. We therefore conclude that the chancellor did not err in acting summarily [*Strickler Engineering Corp. v. Seminar*, 210 Md. 93; *Insley v. Myers,*

*supra*], and that his findings of fact and conclusions of law were sufficient to properly deny specific performance.

The decree must therefore be affirmed.

> *Decree affirmed, with costs to be paid by the appellant.*