ALLVIEW ACRES, INC. *v.* HOWARD INVESTMENT CORP.

[No. 301, September Term, 1961.]

*Decided July 5, 1962.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*John F. Heath* for appellant.

*Charles E. Hogg* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

But for the careless drafting (not by counsel) of an important clause in a contract for the sale of real estate, this case would not be in court. The central question presented is whether the seller made reasonable efforts to obtain a change of zoning of the land contracted to be sold subject to the condition precedent that such a reclassification be obtained. We think it did.

On August 17, 1959, the Howard Investment Corporation (Howard) contracted to sell a tract of land in Howard County containing 104.359 acres to Harry L. Manning or his assignee upon monetary terms not relevant to the disposition of this appeal. The shell of the contract was a standard form of the Real Estate Board of Greater Baltimore containing, *inter alia,*

the usual clause making time of the essence. Settlement date was stated to be January 1, 1960, but any contention which might have been based thereon seems to have been waived, and no point is made of it here.[1] The contract contained an "addendum" which is the clause in controversy and reads as follows:

> "The sellers agree to obtain from the appropriate administrative body of Howard County a reclassification of all of the parcel or tract of land to be conveyed from an R.R. classification to that of an R. classification *precedent to the execution of these presents.*" (Italics ours.)"

On March 15, 1960, Manning assigned his rights under the contract to Allview Acres, Incorporated (Allview), the appellant. The record shows that Manning was an officer of Allview on July 7, 1960. On November 17, 1960, in response to a letter from the president of Howard, dated November 1, 1960, apparently [2] suggesting that Howard desired to "nullify" the contract and retain the deposit, an attorney for Allview wrote the president of Howard advising him that Manning had assigned his rights to Allview and stating that Allview was ready to perform as soon as Howard performed its obligations under the addendum above quoted, that Howard had no right to nullify the contract or retain the deposit, and that unless Howard made a prompt effort to meet the terms of the contract, Allview would have to take action appropriate to compensate it for loss sustained. On November 28, 1960, Allview recorded the contract among the land records of Howard County. On May 18, 1961, Howard, through its attorney, replied to Allview's letter of November 17, 1960 stating Howard's contention that it had taken all actions that could reasonably be expected of it to secure the change in zoning agreed to, and had failed, and that therefore Allview

---

1. Such a provision may, of course, be waived. See *Reed's Heirs v. Chambers,* 6 G. & J. 490; *Hill v. Benevicz,* 224 Md. 79, 89-90, 167 A. 2d 104. See generally 92 C.J.S., *Vendor & Purchaser,* § 231.

2. This letter is not in the record.

could elect to take the property as then zoned or terminate the contract and obtain a refund of the deposit. The letter also stated Howard's intent to take action to expunge the contract from the land records of Howard County if it did not hear from Allview within seven days. On July 6, 1961, Howard filed a bill in equity in the Circuit Court for Howard County praying that the contract be declared void, subject to the return of the deposit to Allview.

In pertinent part the bill alleged: that Howard had applied for rezoning from R.R. to R. on July 7, 1959; that the application was heard on July 23, 1959; that on August 18, 1959, "(one day subsequent to the execution of the said Agreement of Sale)", the County Commissioners denied the application; that on October 26, 1959, Howard sought review of that action by injunction and declaratory judgment; that on February 1, 1960 said relief was denied; that on June 7, 1960 *Allview* applied to the County Commissioners for the same rezoning; and that on July 19, 1960 the County Commissioners denied Allview's application. The bill further set forth the exchange of letters referred to above, alleged that no reply to its letter of May 18, 1961, had been received by Howard, and maintained that counsel for Allview had taken the position that it was required to do nothing until the property was rezoned or this Court affirmed the denial of rezoning. The answer admitted all allegations set forth above except that Allview's counsel had taken the position just stated, which it denied, alleged that the application made by it to the County Commissioners was made illegally without the advice of counsel, and prayed that the complaint be dismissed. Allview also filed a cross bill alleging, in pertinent part, that the quoted "addendum" set no time limit within which reclassification was to be obtained; that Howard had not appealed the decree of the Circuit Court denying relief against the County Commissioners; that conditions had changed so that the Commissioners would be likely to grant rezoning; that Howard had failed to perform its agreement to obtain rezoning; that Allview had not sought to impose a time limit upon such performance, because none was stated in the agreement; that Howard had failed to per-

form and failed to use all reasonable means to perform the agreement; and that Allview had thereby suffered various losses. The cross-bill prayed specific performance of all conditions or payment of $250,000 "as liquidated damages." To this cross-bill Howard demurred.

On October 16, 1961, Judge Macgill entered a memorandum and order sustaining the demurrer to the cross-bill without leave to amend on the grounds that "a reasonable construction of the terms of the agreement would be that, unless the seller had successfully secured the reclassification sought prior to the settlement date, the purchaser would be excused from performance" and that Howard had made reasonable efforts to obtain the reclassification. On November 10, 1961, the original bill came on for hearing and was submitted on the record after opening statement by counsel for Allview. On November 24, 1961, Judge Macgill granted the relief prayed upon the same grounds stated for sustaining the demurrer to the cross-bill. Allview has appealed.

Restated, the appellant's contentions are that the Circuit Court erred (i) in sustaining the demurrer to the cross-bill of complaint which claims specific performance or damages, (ii) in granting the relief prayed in the original bill, and (iii) in not excluding from evidence the resolution denying the application by Allview for rezoning.

The parties appear to have mutually agreed that the clause here in question provided for reasonable efforts to be made by Howard to obtain reclassification of the property rather than an absolute undertaking to do so. The clause is certainly inartistically expressed. Literally it might be said to obligate the seller to obtain the reclassification before ("precedent to") the execution of the contract. It is evident that it was known that it had not then been done, the execution of the agreement appears to have been a waiver of literal compliance, and the course of dealing between the parties following the execution of the agreement indicates that this clause was understood and treated as a promise to make reasonable efforts, and as we understood the argument in this Court it was so treated here.

As we think the parties have interpreted the contract and

as the case is presented to us, the sale was conditioned upon the property being rezoned, the seller's obligation in this regard was to make reasonable efforts to obtain the rezoning, and if those efforts failed, the contract was to be terminated and the deposit returned. Cf. *Shea v. Marton,* 214 Md. 539, 136 A. 2d 247; *Hill v. Benevicz, supra,* 224 Md. at 86; *Livingston v. Green Properties, Inc.,* 222 Md. 354, 357, 160 A. 2d 594; *Griffith v. Scheungrab,* 219 Md. 27, 32-34, 146 A. 2d 864; *Alois v. Waldman,* 219 Md. 369, 375, 149 A. 2d 406 (the last four cases involving the duty of cooperation between or among parties to a contract); *Webb v. Moeller,* 87 Conn. 138, 87 A. 277 (performance of agreement by defendant to subscribe to balance of issue of securities unsold after "best efforts" made by broker was excused where efforts of broker to sell securities were abandoned.) What will constitute reasonable efforts under a contract expressly or impliedly calling for them is largely a question of fact in each particular case and entails a showing by the party required to make them of "activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances." *Stabile v. McCarthy,* 336 Mass. 399, 404, 145 N. E. 2d 821. See also *Livoli v. Stoneman,* 332 Mass. 473, 125 N. E. 2d 785; *Lach v. Cahill,* 138 Conn. 418, 85 A. 2d 481, 482-83 (reasonable efforts by contract purchaser of house to obtain a mortgage); *Saltzman v. McCombs,* 71 Nev. 93, 281 P. 2d 394; *McPherson v. Warren* (La. App.) 55 So. 2d 30; *Hollander v. Friedman,* 360 Pa. 20, 59 A. 2d 892; *Huckleberry v. Wilson* (Tex. Civ. App.) 284 S. W. 2d 205. The appellant does not argue that the prosecution of the application to reclassify to the County Commissioners and thence to the Circuit Court did not constitute reasonable efforts in that either more than one application was needed or that the application was not prosecuted with the requisite skill. It relies solely on the fact that it was initiated forty-two days before the contract was signed.

We have found no case dealing with the question whether efforts, reasonable in themselves, were or were not a compliance with the contract when (absent any specific time stipula-

tions in the contract) they were initiated before the contract was signed and were continued thereafter. In the circumstances of this case, we have no difficulty in concluding that the efforts were reasonable and did constitute a compliance with the contract. The contract says nothing relating to when the application was to be made. At least initially, however, it certainly contemplated that any reasonable efforts were to be made before the date of settlement, which was January 1, 1960. It is to be noted that it was not until February 1, 1960, that the Circuit Court denied relief from the denial of the application for rezoning by the County Commissioners. Assuming that the parties considered such an appeal a part of the reasonable efforts, even initiating the application forty-two days before the contract was signed did not, as it turned out, leave enough time in which to prosecute to termination the appeal to the Circuit Court before the original date set for settlement. Certainly the time interval originally contemplated between the date the contract was signed and the date set for settlement (about four and a half months) was not excessive for initiating and prosecuting a rezoning application. Although the record does not show whether Manning, the original contract purchaser (and an officer of Allview) knew that an application had previously been filed at the time he signed the contract, the time set for settlement and common business practice strongly suggest that the purchaser was aware that the application had been initiated and that the settlement date was set with that in mind. Moreover, the absence of a date specified before or after which an application was required to be made, persuasively suggests that the fact that the application was initiated prior to the date of the contract was to have no legal consequence in the transaction. The facts that the settlement date was not treated as binding by either side, and that no point was made of it here or in the trial court do not, of course, detract from this view of the intent of the parties at the time the contract was signed, which is the relevant intent on this phase of the case.

Approximately four weeks before the contract was signed the County Commissioners held a hearing on Howard's appli-

cation. They had not, however, acted upon it when the contract was signed—the denial came one day later. There is no suggestion that Howard had any advance information that the application would be denied. Where, as here, the application was pending and had not been decided, it seems reasonably clear to us that such application was deemed to satisfy the requirement of the clause of the contract here in question. No possible advantage to either party and no greater prospect of success has been suggested—nor can we envision any—which might have been derived from filing the application after, instead of before, the execution of the contract.

This being the case, the fact that the application was made before the contract was signed cannot affect the reasonableness or timeliness of the efforts made.

As we have said, the appellant appears to rely solely on the timing of the application and not on insufficient prosecution. Although the answer to the bill alleges that a change in condition makes it probable that the commissioners would grant a new application, no evidence to support that contention was offered and that point was not mentioned in the briefs or arguments here. The fact is that the subsequent application made by Allview was denied as well.

Appellant's contention that this application was illegal and therefore should have been excluded from the evidence has no merit in this case, whether or not it might have in another. (We may observe that we have entertained a number of zoning cases brought by contract purchasers, without any challenge to their right to maintain such proceedings.) Since the County Commissioners considered the application on the merits, any contention that it was illegal because Allview lacked sufficient interest in the property and therefore that it should not have been admitted in evidence below is patently untenable. It was certainly relevant to show Allview's knowledge of Howard's prior application and the Commissioners' view that there had been no sufficient change to warrant rezoning.

Likewise, there is no argument here that the efforts lacked reasonableness because Howard failed to appeal to this Court the decree of the Circuit Court refusing to upset the denial

of its application by the County Commissioners. In the absence of the suggestion of any point on such an appeal which would have had merit, the absence of an appeal does not affect the reasonableness of Howard's efforts toward rezoning.

It follows that the Chancellor's decree declaring the contract void, as prayed in the original bill, was correct.

What we have already said disposes of the claim for specific performance in the cross-bill. The bill claims damages as an *alternative* to specific performance. Insofar as this suggests damages for the breach of the contract, what we have already said to the effect that there was no breach of the reasonable efforts requirement disposes of any claim for damages on that ground.

But there seems to be a further contention that Allview is entitled to damages for expenditures and reliance on the bargain because of the delay on the part of Howard in giving notice that it regarded the contract as terminated. Cf. *Coopersmith v. Isherwood*, 219 Md. 455, 462-64, 150 A. 2d 243. Assuming, without deciding, that the equity court could take cognizance of such a claim in the circumstances of this case,[3] we find it to be without merit and demurrable on the face of the cross-bill. There is a short and sufficient reason for this.

---

3. Although it is true that an equity court may grant, in a proper case, monetary damages in addition to or in lieu of equitable relief, that is so only when a case for equitable relief is first established. The court must find a proper ground of equity jurisdiction. *Dormay Corp. v. Doric Co.*, 221 Md. 145, 153-54, 156 A. 2d 632, and cases cited; *McKeever v. Washington Heights Realty Corp.*, 183 Md. 216, 224, 37 A. 2d 305 (in both of which cases equity jurisdiction was found to be present, and the rule stated). This general requirement of equity finds no exception when specific performance is prayed. *Kappelman v. Bowie*, 201 Md. 86, 91, 93 A. 2d 266; *Linthicum v. Washington B. & A. Elec. R. Co.*, 124 Md. 263, 92 A. 917; 49 Am. Jur., *Specific Performance*, § 173. This rule would clearly have deprived the court of equity jurisdiction *if* the cross-bill were the only bill in this case. The court of course had equity jurisdiction under Howard's original bill. Whether that would suffice to allow damages, in a proper case, upon a cross-bill, or whether there ever could have been a proper case for damages in favor of the cross-petitioner, we need not decide.

Allview's cross-bill specifically alleges that it did not impose any time limit on Howard's performance of the condition.[4] Therefore, if damages could be claimed for any delay on the part of Howard in giving notice to Allview that it had made reasonable efforts and that Allview must elect to take the property without rezoning or terminate the contract (cf. *Coopersmith v. Isherwood, supra*), such delay was waived by Allview. See *Hill v. Benevicz, supra,* 224 Md. at 88-90, and authorities there cited.

For the reasons stated, the decree must be affirmed.

*Decree affirmed, with costs.*

---

4. It was on February 1, 1960, that the Circuit Court dismissed Howard's bill of complaint seeking to set aside the ruling by the County Commissioners; and on July 19, 1960, Allview's petition for rezoning was denied by the County Commissioners. On May 18, 1961, counsel for Howard advised counsel for Allview that Allview might elect to take the property not rezoned or to terminate the contract subject to the return of the deposit. Allview's letter of November 17, 1960, clearly indicates that Allview had previously known that Howard's petition had been denied, as does the fact that Allview filed its own petition. It, therefore, did not demand performance before November 17, 1960, when it demanded action "promptly." It seems plain from the letter on behalf of Allview dated November 17, 1960, that by letter of November 1, 1960, Howard had informed Allview of its position that it had met its obligation.