ALPHA ENTERPRISES, INC. *v.*
CAMERON, ET AL.

[No. 182, September Term, 1968.]

*Decided April 2, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, SINGLEY and SMITH, JJ.

*Marvin I. Singer* and *Jan K. Guben,* with whom were *Sulli-
van, Wiesand & Singer* on the brief, for appellant.

*Donald N. Rothman* and *David P. Gordon,* with whom were
*Gordon, Feinblatt & Rothman* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

On November 4, 1964, the appellant, Alpha Enterprises, Inc. (Alpha), entered into a long term lease with the appellee Naval Academy Athletic Association (NAAA), whereby Alpha became the tenant of a 3.5 acre unimproved tract of land located at the intersection of Taylor Avenue and Roscoe Rowe Boulevard in the City of Annapolis. Appellant filed suit against the appellee NAAA, Alan R. Cameron its president, and George R. Deininger its treasurer, both successor trustees, on February 20, 1967, in the Circuit Court for Anne Arundel County for a declaratory judgment as to its rights under the lease. Subsequently, Alpha removed the case to the Superior Court of Baltimore City where it was tried before Judge J. Harold Grady, sitting without a jury. At the conclusion of the trial, Judge Grady ruled that Alpha had no rights under the lease because it had not commenced construction of certain improvements on the demised premises as required by the lease. An order to that effect was filed on March 22, 1968, and from that order Alpha has taken this appeal.

The lease was a culmination of a long series of negotiations between the parties. Paragraph 4 provided in pertinent part:

"4. CONSTRUCTION OF IMPROVEMENTS. Tenant, at its sole expense, shall construct improvements on the leased premises having an aggregate cost of at least Two Hundred Thousand Dollars ($200,-000.00) . . . .

"In the event that Tenant fails to commence construction of the contemplated improvements or to make arrangements for their construction satisfactory to Landlord within two (2) years after the date hereof, Landlord may terminate this Lease sixty (60) days after notice of such termination to Tenant at any time thereafter.

"If construction is commenced, Tenant shall diligently prosecute and complete such construction with reasonable dispatch, having regard to the circumstances and conditions existing at the time."

Alpha originally intended to construct a large hotel or motel on the site, and it applied for rezoning in December 1964. Subsequently, this application was withdrawn prior to a hearing and another was filed in June 1965. After approval by the mayor and city council, an ordinance effectuating the zoning was passed in November 1965. At this point half of the time available to the appellant for the commencement of construction had elapsed. However, the appellant was unable to obtain financing for the development and construction of the contemplated hotel or motel complex. Instead Alpha requested that Mr. Norman Kelly, an architect, prepare plans for an office building and on October 4, 1966, Alpha contracted with Henry A. Knott, Inc. for the erection of the building. Knott was also to handle the arrangements for financing the construction. That same day an application for a building permit was submitted to the City of Annapolis. However, because plans for the electrical and plumbing installations were not submitted, and the mechanical plans were incomplete, a "foundation only" permit was issued.

After these preliminaries had been completed on or just before November 4, 1966, Alpha and its builders began to "commence construction." One of appellant's witnesses testified that the lot was cleared of trees and underbrush, some grading was done, a construction trailer was moved onto the grounds, and the corners of the building had been staked out. Thereafter, according to Alpha, new and more complicated problems arose. It urged that the construction could not proceed because of the discovery of a road which appeared to encroach upon the subject tract, and its inability to locate certain storm drains and sanitary sewers. It is undisputed that the appellant ceased physical construction activity on November 11, 1966. On December 22, 1966, NAAA sent formal notice to Alpha advising it that due to Alpha's failure to commence construction by November 4, 1966, the lease was terminated.

On appeal, the appellant urges that the lower court erred in holding that construction on the subject tract had not commenced as required under paragraph 4 of the lease. In addition, Alpha contends that having commenced construction it diligently continued the work under the then existing conditions

and circumstances. After a careful review of the record, this Court is unable to say that the lower court erred in finding that construction had not commenced. Further, even if we could find such error, Alpha did not pursue the construction with reasonable diligence as required by paragraph 4 of the lease.

In its opinion the lower court indicated that a determination of whether construction has commenced as of a given date depends not only upon the physical acts which occur on or before that date, but also upon the intention with which such acts are performed. We agree with such an analysis. In *Ross v. Montgomery County,* 252 Md. 497, 250 A. 2d 635, the appellants had obtained a building permit in order to construct an apartment hotel. The permit's terms required that construction must begin within six months after the date of its issuance. The first and only work performed under this permit prior to its expiration consisted of an excavation 7 feet by 15 feet and 14 feet in depth, and the installation of a single footing. This Court upheld the chancellor's finding that the appellants did not begin construction in good faith and that the work done was merely "window dressing" for the building inspector's benefit. Mere commencement of some work has been held not to constitute commencement of construction in a mechanics' lien case since "the work done must have been begun with the intention and purpose then formed to continue the work until the completion of the building." *Rupp v. Earl H. Cline & Sons,* 230 Md. 573, 578, 188 A. 2d 146, 149. See also *McClung v. County of Henrico,* 200 Va. 870, 108 S.E.2d 513 (1959), where the Supreme Court of Appeals of Virginia held that an individual in removing trees, grading a portion of the land, setting up stakes and hauling stone to the site had not commenced construction under a zoning ordinance.

In the instant case, the lease under consideration provides for the payment of a percentage rent in addition to a fixed minimum rent of $7,000.00 per year. Thus, in addition to the security of the minimum rent, NAAA had an economic interest in having the property developed with dispatch. A failure by Alpha to begin a *bona fide* construction by the date specified in the lease would not fulfill the intentions of the parties, nor give NAAA its bargained for benefits. Such a failure on Alpha's

part would justify a termination of the lease by NAAA. After hearing all of the evidence, the lower court found:

"I do not believe it is necessary in this case to characterize plaintiff's activities as being a fraud or a sham, but what I do find from the evidence is that the plaintiff has failed to demonstrate that *bona fide* construction of a buiding was commenced in the sense that a contemplated improvement valued in excess of $200,000 was actually underway. A sporadic attempt was made to grade the lot and put stakes in the ground. These might be very significant if they were followed through with a progressive plan of construction, and would be given an entirely different interpretation if a person had a well formulated plan to go forward, that is to start there and carry forward in some reasonable, practical manner. Then I think this would have an entirely different legal result than does this episodic thing —an incomplete project which the evidence shows was not really contemplated to be carried through to completion. This was demonstrated by the cessation of activities on November 11th through to the date of cancellation of the contract."

The evidence adduced at trial fully supports the lower court's findings and we cannot say that the court was clearly erroneous. After it had obtained the needed rezoning for the tract, Alpha faced difficulties in obtaining the needed financing. In August 1966, less than three months before the deadline, Alpha requested that NAAA agree (1) to subordinate its interest to aid the financing of the improvements and (2) to grant a six months extension of time for commencement of construction. Both requests were refused. There was evidence that Alpha did not even consider building an office building instead of a hotel or motel until August 30, 1966. Plans were not begun for such a structure until September 13, 1966, and were never finished. The contractor Knott was only required to proceed with construction "upon receipt of building permit"; the availability of financing for the building was similarly conditioned. Due to the incompleteness of the plans the appellant could obtain a "foundation only" building permit which would allow no superstructure

whatsoever. Appellant's application for the permit contained the following description:

> "This is a speculative office building with no tenants at this time.
>
> "Plumbing, Heating, Ventilating, Air-Conditioning and Electrical drawings will be submitted for your approval when actual tenant requirements are ascertained."

Such tenants were never procured and without them there could be no complete architect's plans. Without such plans there could be no building permit, and the contractor would not be obligated to build or obtain the financing.

Finally, the purported construction of the building was undertaken when the appellant's time had all but expired. Under these circumstances the lower court could, as it apparently did, properly conclude that there was no *bona fide* commencement of construction. Even if this Court could say that Alpha did commence construction before the November 4, 1966 deadline, the appellant failed to prosecute the work in a diligent manner. As earlier noted all physical construction activity on the tract ceased on November 11, 1966. Alpha argues that construction could not proceed on two grounds: a road "appeared to encroach upon the subject tract," and Alpha was unable to locate certain storm drains and sanitary sewers. Since the lower court found there was never an original commencement of construction it did not rule upon the question of reasonable diligence. However, the court did make an observation with which we agree.

> "But it seems to me reasonable to expect that under normal construction or surveying procedure an experienced architect or surveyor would have had little difficulty resolving the questions which supposedly caused this cessation of work.
>
> . . . .
>
> . . . [I]t is not really reasonable to believe that where the sewer lines were located, constituted any impediment that could not have been cleared up within a matter of days, or at least a couple of weeks, by anyone reasonably diligently pursuing this work."

For the above reasons this Court concludes that NAAA had the right to terminate the lease with Alpha, and the order of the lower court must be affirmed.

*Order affirmed. Costs to be paid by the appellant.*