MICHAEL *v.* TOWERS, ᴇᴛ ᴀʟ.

[No. 195, September Term, 1968.]

*Decided April 3, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, SINGLEY and SMITH, JJ.

*Robert J. Woods* for appellant.

*Kenneth E. Pruden,* with whom was *George T. Burroughs* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal from a decree entered by the Circuit Court for Prince George's County, sitting in equity, which rescinded two contracts for the sale of real estate. The chancellor found, and we think quite properly, that the contract purchaser had failed to act with the diligence and expedition which the contracts required.

On 19 August 1964, Mrs. Bessie F. Brown, one of the plaintiffs below and an appellee here, entered into a contract with Irving Kamins, one of the defendants below, under which Mrs. Brown agreed to sell 34.29 acres of land in Prince George's County for $203,000. The contract provided that a deposit of $5,000 would be held by Kurt Berlin. On 22 December 1964, Mr. and Mrs. G. Chester Towers, also plaintiffs below and appellees here, entered into a substantially identical contract with Kamins for the sale of 7.16 acres for $88,600. A deposit of $3,000 was similarly to be held by Berlin.

The contracts contained provisions with respect to survey, adjustments of purchase price and the terms of the mortgage which would secure the payment of that part of the consideration not to be paid in cash, none of which is significant here. What is important, however, is the following provision which appeared in both of the contracts:

> "This contract of sale is contingent upon the Purchaser being able to procure rezoning of the property described herein for R-18 zoning classification. *Purchaser shall apply for rezoning immediately and shall prosecute the application for rezoning with due diligence*

*and as expeditiously as possible,* with all expense there-
for being charged to the Purchaser without obliga-
tion to the Seller. (Emphasis added)

Each contract provided for settlement within 60 days of the
granting of R-18 zoning.

More than two years slipped by during which Mrs. Brown
and the Towers heard nothing, and on 1 March 1967 Kenneth
E. Pruden, their counsel, wrote to Mr. Berlin, who held the de-
posits :

"This letter is to inquire as to whether or not you hold
such a check, whether or not the check has been cashed,
the name of the maker and the name of the Bank upon
which the check is drawn.
"Also, would you advise as to whether or not you
represent the Purchaser in this matter and in the event
you do not, would you advise as to who does repre-
sent the Purchaser."

When no reply was received, Mr. Pruden wrote again on 15
March. On 20 March, Berlin replied :

"In regard to your letter of March 1, 1967, please
be advised that subsequent to your phone call before
March 1, 1967, I had in my possession a check from
Irving Kamins, which I, at your request, was going
to deposit to be held in escrow. Since the check was
over one year old I called Mr. Kamins and received
from his assigns a cashier's check drawn on the United
Community Bank in the sum of $8,000 which has now
been deposited.

"I furthermore advise you that Orie Seltzer, 1111
Massachusetts Avenue, Northwest, is the person to
whom you should talk in regard to this matter * * *."

On 16 May 1967, Mrs. Brown and the Towers filed identical
bills of complaint against Kamins, seeking a declaration that
the contracts were null and void and of no legal effect. Kamins
answered by generally denying the allegations.

Ten months after the suits had been filed, Murray H. Michael intervened in the proceedings. It was then that Mrs. Brown and the Towers learned for the first time that Kamins had assigned his interest in the contracts to Michael, although Kamins had testified in a deposition taken in November of 1967 that the contracts had been assigned to Orie Seltzer on 28 January 1965. At that time, Kamins had refused to produce the assignment. Michael filed an answer and Mrs. Brown's case and the Towers' case were consolidated for trial.

Richard J. Castaldi, a principal clerk for the Maryland-National Capital Park and Planning Commission (the Planning Commission) was called as a witness on behalf of the Towers and Mrs. Brown. He testified that applications for rezoning of the Brown and Towers properties had been filed with the Planning Commission on 29 January 1965 by Orie Seltzer, as agent for the owners, and he stated that there had been no notice or demand that the applications be forwarded to the District Council.

Michael testified that Seltzer acted as his agent in filing the application for rezoning on 29 January 1965; that subsequent to the filing he made "numerous phone calls" and was "in constant touch" and had "meetings" with the Planning Commission.

The chancellor concluded that Michael, as assignee of the Kamins' contract, had not met his contractual obligation to act "with due diligence and as expeditiously as possible" in pursuing the zoning application and entered the decree rescinding the contracts, from which Michael took this appeal.

In support of his appeal, Michael advances three contentions: First, that Mrs. Brown and the Towers failed to make out a prima facie case; second, that they failed to meet the burden of proof; and finally, that they were estopped from complaining of lack of diligence when they chose to treat the contracts as continuing obligations.

We shall consider the last of these points first. While it is true that a right to rescind may be waived by unreasonable delay or by continuing to treat a contract as a subsisting obligation, 17 Am. Jur. 2d *Contracts* (1964) § 510 at 992; *Cooper-*

*smith v. Isherwood,* 219 Md. 455, 462, 150 A. 2d 243 (1959) ; *Kemp v. Weber,* 180 Md. 362, 24 A. 2d 779 (1942), the lower court chose to regard Mr. Pruden's letter of 1 March as an inquiry and chose not to accept Berlin's account of a telephone conversation with Mr. Pruden:

> "He [Mr. Pruden] wanted to know if I was holding the checks or cash, or whether I had deposited the cash. I told him I only had checks, and that if he wanted me to I would, since they had expired, get new checks and deposit them. He said yes, and he wanted to know on what bank they were drawn, and he then followed that up with the letter of March 1."

as indicating that it was anything more than an inquiry. We cannot say that the conclusion reached by the chancellor, who had an opportunity to see and hear the witness, was clearly erroneous. Maryland Rule 886 a.

Michael's complaint with respect to the sufficiency of the evidence adduced can be readily disposed of. In *Allview Acres, Inc. v. Howard Investment Corp.,* 229 Md. 238, 182 A. 2d 793 (1962), where we considered a contract which was interpreted by the parties as requiring the contract purchaser to use reasonable efforts to obtain rezoning, we said:

> "* * * What will constitute reasonable efforts under a contract expressly or impliedly calling for them is largely a question of fact in each particular case and entails a showing by the party required to make them of 'activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances.' " 229 Md. at 244.

In *Atholwood Dev. Co. v. Houston,* 179 Md. 441, 19 A. 2d 706 (1941) we said,

> "* * * What constitutes reasonable diligence is a question of fact depending on the circumstances of each particular case. The manner in which a person of ordinary diligence would presumably act under similar circumstances is the standard by which the court should

determine whether this duty was properly performed."
179 Md. at 446.

*See also, Alpha Enterprises, Inc. v. Cameron,* 253 Md. 49, 251 A. 2d 582 (1969).

As we see it, Michael's reliance on *Sears v. Polan's 5¢ to $1.00 Store, Inc.,* 250 Md. 525, 533-34, 243 A. 2d 602 (1968) is misplaced. *Sears,* like *Allview Acres v. Howard, supra,* involved contracts which specified a date for settlement. In *Sears,* the purchaser, and in *Allview,* the seller, had initiated the necessary zoning proceedings, which were not concluded by the dates fixed for settlement, through no fault of the purchaser, in *Sears,* or of the seller, in *Allview.*

Here, the contract provided that the purchaser would proceed with diligence and expedition. He had more than two years in which to act between the signing of the contract and the filing of the suit, and nearly a year from the filing of the suit to the time when the case was heard. The conclusion that the zoning problem could have been resolved in either of these periods is as nearly irrefutable as can be imagined, and proof of Michael's lack of activity established a prima facie case for Mrs. Brown and the Towers. In the language of *Allview, supra,* it then became Micheal's burden to show "activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances."

Code of Public Local Laws, Prince George's County (1963), (Art. 17, Code of Public Local Laws of Maryland) § 59-83(b), provided that any zoning amendment should be submitted to the Planning Commission (through its Planning Board) for approval, disapproval or suggestions and that after 1 June 1963, "* * * said Planning Board shall have been allowed a reasonable time, not less than three (3) months, for consideration and report." *See Dal Maso v. Bd. of County Comm'rs,* 238 Md. 333, 209 A. 2d 62 (1965). Ch. 854 of the Laws of 1965 amended § 59-83(b) so that the "* * * Planning Board shall be allowed a reasonable time not more than six (6) months for consideration and report." This provision was in effect from 1 June 1965 until 31 May 1967, when the time limit was removed by Ch. 667 of the Laws of 1967.

Under the statutory framework which existed from six months after the date of the contract until after the filing of the bill of complaint, Michael could readily have exerted pressure on the Planning Commission or brought formal action against it. *See Tyler v. Balto. County,* 251 Md. 420, 247 A. 2d 704 (1968) ; *Board of County Comm'rs v. Oxford Dev. Co.,* 209 Md. 373, 121 A. 2d 239 (1956). His unexplained failure to show that he had ever so much as requested the Planning Commission to report to the District Council was a breach of the undertaking to act with diligence and expedition.

In commenting on the equities involved, the court (Powers, J.) said :

"The relative positions of the parties must be borne in mind so that equity will be done. When the sellers signed the contracts, their property was off the market and a ceiling on price was established. For $3,000 and $5,000 deposits, amounting to less than 3½% and 2½% of the purchase price, the purchaser, through a straw party whose financial responsibility is unknown, and who has thus incurred no personal financial liability to the sellers, has been able to get the full benefit of any rise in value for a period of about three and a half years. Moreover, until after March 15, 1967, when inquiry was made by sellers' counsel, for more than two years prior thereto, the only deposits were two stale-dated unnegotiated checks. By putting up a nominal deposit, on checks of questionable validity, he might well realize an enhancement of several hundred percent of the stated purchase price. Meanwhile, the sellers are continuing to pay taxes, do not have the use of the deposit, and if by any chance the value goes down, to whom do the sellers look to enforce the contracts ?

"Rapidly rising values of real estate in this County has bred a frequently indulged in practice of deliberately delayed settlement, under which the seller continues to be bound with no visible benefits of his

bargain, while the purchaser can speculate on his contract, with virtually no risk."

We share the chancellor's view that Michael compounded his lack of diligence with a singular lack of prudence. As Emerson put it, "In skating over thin ice our safety is in our speed." [1]

*Decree affirmed; costs to be paid by appellant.*

---

1. Essay on "Prudence", 1841, Complete Essays of Ralph Waldo Emerson, Mod. Lib. Ed. (1940) at 244.