## CHARLES L. KEMP ET UX. *v.* LOUIS WEBER

[No. 23, January Term, 1942.]

*Decided March 3, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Charles G. Watson* for the appellants.

*William M. Somerville* and *Clarence Leppel, Jr.,* for the appellee.

MARBURY, J., delivered the opinion of the Court.

Appellants filed their bill of complaint for the return of all payments made by them to the appellee under a contract of purchase of certain land in Allegany County, dated April 21, 1932, and for the money, labor and improvements placed and expended upon the land, and for profits they could and should have made. The agreement describes the property by metes and bounds. The purchase price is $3,800, which is to be paid at the

rate of $25 a month for one year and $35 a month thereafter until the whole, with interest at 6 per cent., is paid.

The basis of the complaint is that the purchasers were told that the tract, when they agreed to buy it, contained forty-four and twenty-seven one-hundredths acres, and that in fact what they received was only twenty-four acres. The testimony shows that a Mr. White, who was acting for the appellee at the time the contract was made, saw the appellants looking at the property. He showed them the lines, gave them a price, and told them that the tract contained forty-four acres. The contract did not state the acreage, and the appellants did not have the property surveyed.

In 1934, some question arose whether an island in the Potomac River belonged to this property or to a Dr. Clymer. Some proceeding was filed in the name of the appellants against Dr. Clymer, although the testimony shows that the appellee arranged for the case. This action was apparently brought about by the attempt of the appellants to cultivate the island. After a hearing, the Circuit Court for Allegany County determined that the appellants were not entitled to a restraining order against Dr. Clymer, and the preliminary order was dissolved. No further proceedings were had in this case, and from that time on, Dr. Clymer has possession of the island.

It appears that the first definite information the appellants had that the property did not contain forty-four acres was when some soil conservation men checked up the lines. No survey was made at that time, but the acreage was then estimated. This was in 1935 or 1936. About that time the interest on the unpaid purchase price was reduced by the appellee from 6 to 5 per cent., although the record does not show whether or not that had anything to do with the shrinking acreage. From that time on, however, the appellants continued to live on the property. They fixed some steps and a door, and had the house painted in 1937; put in a furnace in 1938; put down a concrete sidewalk in 1939; sold six acres

of the land to a Mr. Dawson in 1940, the appellee apparently executing the deed and the purchase price being applied on account of the contract; similarly sold another tract of the land with a house on it to a Mr. Smith in 1940, this purchase price being also applied to the contract; built a new house on the remaining part of the land in 1940, and are now living in the last-mentioned dwelling. The statement of the account under the agreement shows payments made in February, June, August and October, 1937, and in March, 1939. In May, 1940, there was a credit of $100 from the sale to Smith, and on September 26, 1940, there were two credits, one of $600 from the sale to Dawson, and one of $1,900, the balance from the sale to Smith.

The appellee contends that whatever may have been the ideas of the parties as to the amount of acreage, neverthless, this was a sale in gross and not by the acre, and that, therefore, the appellants cannot recover. He also contends that inasmuch as the appellants are in default under the terms of their agreement, they cannot maintain this suit. A third ground of objection is that after discovering the supposed deficit in acreage, the appellants continued to occupy and use the land. Having made their election, at a time when they knew or had reason to know that the amount of land included in the agreement was not as much as they thought when they bought it, they must abide by that election, and cannot now change their minds. The court below found for the appellee on all three grounds, and dismissed the bill.

When a party to a contract is faced by some failure in carrying out its terms on the part of the other party, he has, in general, either a right to retain the contract, and collect damages for its breach, or a right to rescind the contract and recover his own expenditures. Obviously he cannot do both. The contract cannot be in effect, and at the same time rescinded. If in effect, he can get damages; if rescinded, he must return his benefits, and receive his expenditures. He cannot, of course, retain the benefits and get back his expenditures. He would

then be receiving a free gift of whatever he got under the contract. He, therefore, has a choice.

All the authorities hold that such choice must be exercised as soon as the party ascertains the facts, and is informed of the failure on the part of the other party. The reason for this is clear. Having then a knowledge of the facts, he is not deceived. If he is unwilling to take the benefits accrued or accruing under the contract, he has an opportunity to disavow it, get back what he has put out, and place himself in approximately the same position in which he would have been had no contract been made. It he does not do this, but continues receiving the benefits coming to him under the contract, he has affirmed the contract after knowing the facts. He may have been deceived in the first instance, but he is not deceived after he knows. Making his choice after he knows, he must abide by it. 12 *Am. Jur.*, paragraph 447; *Telma v. Gingell,* 157 Md. 411, 146 A. 221; *Tolchester Beach Improvement Co. v. Boyd,* 161 Md. 269, 156 A. 795, 81 *A. L. R.* 895; *Stephenson v. Upper Ashburton Realty Co.,* 170 Md. 288, 184 A. 230; *Ortel v. Upper Ashburton Realty Co.,* 171 Md. 678, 190 A. 239.

The case before us clearly comes within this rule. The appellants found out in 1934 that they did not own an island which they claimed. In 1935 or 1936 they were told by the soil conservation agents that there was a serious difference between the acreage they had, and the forty-four acres they supposed they had. They did not have the property surveyed. Neither did they attempt to rescind the contract or have the purchase price reduced. On the contrary, they continued to live on the property, continued to make small payments on the contract, and improved the house they lived in. They sold off six acres with the consent of the appellee, who, of course, had to make the deed. The purchase price for this was applied on the contract. They then sold the house they had been living in, applied the purchase price of this to the contract and built themselves a new house on the property. In this house they are still living. Now

they ask that everything they have put into the property be returned, in spite of their acceptance of the benefits of the contract after they knew the property described in it did not include as much land as they thought originally.

In our view of the case, it is unnecessary to consider the other objections raised by the appellee. Even in cases of fraud, this court has held that the election to rescind must be prompt. In this case there seems to have been no fraud. The most that can be said is that there was a mistake in estimating the acreage. When the appellants learned that they were not getting forty-four acres under the agreement, they should have acted at once had they desired to abandon the contract. They did act, but they did not abandon the contract. On the contrary, they continued to act under it, and they cannot now be heard to ask for the repayment of what they put in the property.

*Decree affirmed. The appellants to pay the costs.*