# LAZORCAK *v.* FEUERSTEIN

[No. 34, September Term, 1974.]

*Decided November 8, 1974.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Murray L. Deutchman,* with whom were *Bullard & Deutchman, P.A.* on the brief, for appellant.

*Michael A. Schuchat,* with whom was *Gary L. Manuse* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

When the Circuit Court for Montgomery County made final a judgment for the full claim of Daniel Feuerstein (appellee), the obligee on a cognovit note, it necessarily rejected, and we think quite correctly, the defense on equitable grounds as well as the counterclaim asserted by the obligor on that note, Stephen A. Lazorcak, Jr. It is the rejection of these which impels Lazorcak's present appeal to this Court. There is no significant controversy concerning the facts.

In the spring of 1972, Lazorcak, who was at that time a sales trainee for the Baltimore Chemical and Equipment Corporation, a company which sold, among other things, dry cleaning machines, met, on one of his sales trips to the District of Columbia, Feuerstein, the owner of Park Plaza Valet, a laundry business being operated in the basement of 1629 Columbia Road, N.W. It was due to the impresario nature of the more experienced salesman, Harlan Weiland, who traveled with this trainee on the sales route, that Lazorcak and Feuerstein began the discussions which eventually brought about a sale of appellee's laundry business to the appellant.

Before this sale of the business was consummated, Mr. Lazorcak, a novitiate at being an entrepreneur, "learned the ropes" at Park Plaza Valet under the tutelage of Mr. Feuerstein. During this education period the appellant was fully informed as to how both the major aspects of the business — the "drop off" laundry as well as the coin

operated dry cleaning machine — functioned and generated income.

Ultimately settlement took place on April 7, 1972, after the parties [1] on that same day had signed an "Agreement of Sale," wherein Feuerstein agreed to "sell, assign, transfer, and deliver" :

"(1) All mailing and customer lists, as presently constituted;

(2) All machinery, equipment, inventory and supplies owned by Seller, located on Seller's business premises and used by Seller in his business as presently constituted . . . ;

(3) All of Seller's right to the existing lease with Plaza Joint Venture T/A Park Plaza Apartments for the premises in which Seller's existing business is located;

(4) All of Seller's good will; and

(5) All of Seller's accounts receivable and customers' property, subject to the assumption by Purchaser of all of Seller's trade accounts payable."

And Lazorcak agreed to pay:

"(a) The purchase price shall be Eighteen Thousand Five Hundred Dollars ($18,500.00), of which amount the sum of Three Thousand Five Hundred Dollars ($3,500.00) shall be payable by certified check at closing and the balance of Fifteen Thousand Dollars, which shall be evidenced by Purchaser's negotiable promissory note in the form of Schedule B attached hereto, shall be payable in 60 equal consecutive monthly installments of $250.00 each commencing one (1) month after the closing date."

With the consummation of this transaction, appellant

---

[1]. In addition to Lazorcak and Feuerstein signing the agreement, Mr. Weiland also endorsed, guaranteeing performance by Lazorcak.

assumed control and went to work running his new enterprise. His initial efforts met with so much success that within only a few months he was aspiring to expand. However, this enthusiasm was short-lived as appellant discovered during his investigation of the requirements incident to enlarging the business that the dry cleaning machine, which was included in the initial purchase and which was quite profitable, was being operated in the basement in violation of Title 7, Part 114 of the District of Columbia fire code. As a result of this dismal discovery, Lazorcak had his attorney send to Feuerstein's attorney the following letter on July 19, 1972:

> "On behalf of my client, Stephen A. Lazorcak, Jr., I am writing to *suggest* that certain circumstances have arisen which I believe justify a complete rescission of the agreement between Mr. Lazorcak and your client Mr. Feuerstein. The problems that have arisen relate to a contingent D.C. tax liability which was undisclosed by Mr. Feuerstein and which could easily result in a serious penalty being imposed upon Mr. Lazorcak or the business for willful failure to report certain amounts of income. Further, the business is being operated in a manner and in a place which I believe is in violation of the District of Columbia fire code, which raises a situation of commercial frustration. Under the circumstances rather than take the chance of reporting these matters to the appropriate District of Columbia authorities, *perhaps* the best manner of handling the case would be for the parties to agree to a rescission, cancellation of all indebtedness and return of funds. *Perhaps* a meeting should be set up to discuss these matters after you have spoken to your client." (emphasis added).

Even though appellant did not receive a response to this letter, he conducted the business as he had in the past and did not fail to make the July, August and September

payments on the purchase price indebtedness as they became due. Then, when Lazorcak continued to operate the business and receive its benefits, but was, nevertheless, remiss in making the October and November payments on the note, Feuerstein instituted this court action on November 30, 1972. Appellant responded by pleading the general issue and asserting specially:

> "That there has been a complete failure of consideration.
>
> "That for equitable plea states that he is entitled to a rescission on the basis of 'Commercial frustration' and total failure of consideration."

In addition Lazorcak filed a countersuit [2] in three counts which he characterizes as 1) "breach of contract"; 2) "fraud"; and 3) "equitable relief by way of rescission." Following a full hearing, Judge Fairbanks, the trial judge, was not convinced as to the merits of Lazorcak's pleas or counterclaim and accordingly entered judgment against him in the amount of $14,000 with interest, the balance then due on the purchase price of the laundry business.

In trying to persuade this Court to reverse the trial court's adverse determination the appellant frames the issues here as follows: [3]

I. "Whether it is a *failure of consideration* when a purchaser buys a business and machinery used in the business 'as presently constituted' and after the sale learns that certain of the machinery essential to the business as 'constituted' may not be used due to local licensing and fire regulations."

II. "Whether the purchaser of a business is entitled to a *rescission* of the contract of sale where

---

**2.** Lazorcak also filed a cross-claim against his codefendant on the confessed judgment note, Mr. Weiland, but that cross-claim is not an issue in this appeal.

**3.** Appellant initially proposed a third issue — fraudulent inducement — but this was abandoned at oral argument in this Court.

the purchaser is prohibited from using certain equipment essential to the business due to local fire and licensing regulations when the seller of the business and those working for him, prior to the sale, assure the purchaser that the business and equipment as 'constituted' at the time of the sale is properly located and operating." (emphasis added).

Appellant calls the "failure of consideration" aspect "the basic underlying thrust of [his] case," as his "counterclaims have had one thrust, i.e., that he did not get what he bargained for, substantially." Then becoming more specific, he urges that the "failure of consideration" resulted "from the 'illegality' of the operation of the business and the machinery located therein 'as presently constituted,' i.e., it violated a fire code," which "illegality," since it was not known or foreseen by him, appellant reasons, voids the contract as a matter of law.

Before answering this contention we observe that although the appellant utilizes the term "failure of consideration" [4] he apparently does not question the existence of a sufficient consideration here to make this contract binding. Instead, since appellant's dissatisfaction with the contract stems from the fact that he received a dry cleaning machine from the appellee, which he later discovered could not be legally operated in the place it was then located, Lazorcak is really seeking redress for Feuerstein's failure to perform as originally anticipated by the agreement.

When a contracting party is displeased with the other's performance he may follow either of two alternative courses of action, if under the facts they are open to him: (1) he can

---

4. It is noteworthy to mention that there are authorities who think that the use of the phrase "failure of consideration" in the context in which the appellant uses it, is a misnomer, as strictly speaking that phrase means lack of the consideration which is necessary to make an agreement binding in the first place. *Hurlburt v. Kephart*, 50 Colo. 353, 115 P. 521 (1911); *Konecko v. Konecko*, 164 C.A.2d 249, 330 P. 2d 393 (1958); 17 *Corpus Juris Secundum* 848; *Corbin on Contracts*, § 133 (1963).

reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission. *Kemp v. Weber,* 180 Md. 362, 365-66, 24 A. 2d 779 (1942); *Corbin on Contracts,* § 1102 (1964). Because specific performance was unavailable to the appellant under the facts here, and since he made no effort whatsoever, based on a breach of this contract, to prove specifically any monetary damages, we cannot authorize other than a nominal recovery under the first alternative *(S & S Bldg. Corp. v. Fidelity Storage,* 270 Md. 184, 189, 310 A. 2d 778 (1973)) as "if [actual] compensatory damages are to be recovered [for breach of a contract], they must be proved with reasonable certainty and may not be based on speculation or conjecture." *Charles Co. Broadcasting v. Meares,* 270 Md. 321, 332, 311 A. 2d 27 (1973). We are, therefore, left with a decision as to whether the appellant qualifies, under the facts of this case, for any relief through rescission of the contract.

Lazorcak claims that because of "failure of consideration . . . fraud . . . mutual mistake, innocent misrepresentation or frustration of the purpose of the contract (commercial frustration)," he is entitled to a rescission of the entire sale agreement and a recovery of all monies he paid because of it. Although appellant earnestly presents proof and authorities which, he suggests, support rescission on these grounds, it is unnecessary for us to pass upon their substance in this case because, even accepting the position of the appellant that his attack on the contract for these reasons authorizes rescission, and further assuming that it is proper for the appellant to rely on the equitable remedy of rescission by pleading it in this law action, his failure to promptly and properly manifest his determination to repudiate the contract presents a hurdle which he does not surmount.

Clearly a failure, to whatever degree, of a party to perform his part of a contract, though it may give rise to a suit for damages, does not in and of itself act to rescind that contract. Instead, as a general rule, the party seeking

rescission must indicate to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts. *Kemp v. Weber, supra* at 365. This offer of restoration or tender back must, at a minimum, demonstrate an unconditional willingness to return to the other party both the consideration that was given by that party and any benefits received under the contract. *Funger v. Mayor of Somerset,* 249 Md. 311, 333, 239 A. 2d 748 (1968); *Funger v. Mayor of Somerset,* 244 Md. 141, 223 A. 2d 168 (1966); *Glen Alden v. Duvall,* 240 Md. 405, 215 A. 2d 155 (1965); *Talbert v. Seek,* 210 Md. 34, 122 A. 2d 469 (1956); *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518,124 A. 2d 557 (1956); *Gaver v. Gaver,* 176 Md. 171, 4 A. 2d 132 (1939); *Restatement of Restitution,* §§ 65 and comment e, 66 (1947). This effort to resume the status quo is required as, if a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind. As this Court stated in *Kemp v. Weber, supra* at 365-66:

> "When a party to a contract is faced by some failure in carrying out its terms on the part of the other party, he has, in general, either a right to retain the contract, and collect damages for its breach, or a right to rescind the contract and recover his own expenditures. Obviously he cannot do both. The contract cannot be in effect, and at the same time rescinded. If in effect, he can get damages; if rescinded, he must return his benefits, and receive his expenditures. He cannot, of course, retain the benefits and get back his expenditures. He would then be receiving a free gift of whatever he got under the contract. He, therefore, has a choice.
>
> "All the authorities hold that such a choice must be exercised as soon as the party ascertains the

facts, and is informed of the failure on the part of the other party. The reason for this is clear. Having then a knowledge of the facts, he is not deceived. If he is unwilling to take the benefits accrued or accruing under the contract, he has an opportunity to disavow it, get back what he has put out, and place himself in approximately the same position in which he would have been had no contract been made. If he does not do this, but continues receiving the benefits coming to him under the contract, he has affirmed the contract after knowing the facts. He may have been deceived in the first instance, but he is not deceived after he knows. Making his choice after he knows, he must abide by it. 12 *Am. Jur.*, paragraph 447; *Telma v. Gingell,* 157 Md. 411, 146 A. 221; *Tolchester Beach Improvement Co. v. Boyd,* 161 Md. 269, 156 A. 795, 81 A. L. R. 895; *Stephenson v. Upper Ashburton Realty Co.,* 170 Md. 288, 184 A. 230; *Ortel v. Upper Ashburton Realty Co.,* 171 Md. 678, 190 A. 239."

See 3 *Black, Rescission & Cancellation,* § 594.

However, in order that tender back does not become too harsh a requirement, there have been carved out in the law certain limited situations in which a contracting party may be excepted from the prerequisite that the parties be returned to the status quo. These exceptions were delineated by this Court in *Funger v. Mayor of Somerset, supra,* 244 Md. at 151, where it was stated:

"Equity will in an appropriate case order rescission without restoration if: (1) the performance by the one against whom rescission is sought has become worthless, or (2) the respondent has prevented its return, or (3) the performance conferred only an intangible benefit upon the complainant, or (4) only a promise was given, or (5) the complainant can properly retain it irrespective of the voidable transaction, or (6) it is in possession of or is subject

> to the order of a person having a right superior to the complainant, or (7) restoration is impossible for some reason not hereinbefore mentioned and the clearest and strongest equity demands that rescission be granted (sometimes with a monetary substitute for restoration). *Restatement, Restitution* §§ 65 and 66; *Restatement, Contracts* §§ 480 and 481; 3 *Black, Rescission and Cancellation* §§ 616-27."

Because it is clear that the appellant cannot find refuge in any of the exceptions enumerated above, he must show that he followed the abrogation and restoration requirements previously described. But this he cannot do, as the only evidence which is even suggestive of a gesture by the appellant that he desired rescission (besides the plea and counterclaim seeking rescission filed nearly nine months after the discovery of the illegality involving the use of the dry cleaning machine) is the July 19th letter, quoted above. However, this letter does not amount to an unequivocal offer of restoration, as it does not specify that appellant has definitely decided that he wants rescission. On the contrary, it can only be interpreted as an inquiry amounting to an invitation to discuss problems concerning the business. Furthermore, and perhaps of greater significance, the appellant retained ownership rather than offering to return the business to the seller when he learned of the fire code violation in July of 1972; he not only continued to make payments for the business to the appellee until more than two months after the July letter, but he also maintained and operated the business through August of 1973 — retaining all of the profits and other benefits. Certainly these activities cannot be interpreted as a manifestation of an attempt to attain rescission, but can only be viewed as a reaffirmation of the contract.

Since it appears that the sale of the business to Lazorcak has not been successfully attacked by him, we affirm the action of the circuit court both in ordering the appellant to

pay the remainder of the purchase price and in rejecting his counterclaim.

*Judgment affirmed.*
*Costs to be paid by the appellant.*