467 A.2d 533

**BAGEL ENTERPRISES, INC., et al.**

v.

**BASKIN & SEARS et al.**

**No. 1851, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Nov. 3, 1983.

Certiorari Denied April 2, 1984.

Michael J. Grady, Silver Spring, with whom were Peter I.J. Davis, Charles Norman Shaffer, Walter Lee and Shaffer & Davis, Silver Spring, on brief, for appellants.

Albert D. Brault, Rockville, with whom were Janet S. Zigler and Brault, Graham, Scott & Brault, Washington, D.C., on brief, for appellees, Baskin & Sears, Michael Jackley, William Kaplan and Charles Whittlin.

John A. Buchanan, Upper Marlboro, with whom were Sasscer, Clagett, Channing & Bucher, Upper Marlboro, on brief, for appellee, Bagel Nosh, Inc.

Argued before LISS, ADKINS, and GETTY, JJ.

LISS, Judge.

This case arises out of a declaration filed in the Circuit Court for Montgomery County by Bagel Enterprises, Inc., a Maryland corporation, and by Arnold Mallinger, Rita Mallinger and James Corey, the appellants herein. The appellees in this proceeding are Baskin & Sears, a partnership engaged in the practice of law, and William Kaplan, Michael Jackley, licensed in Maryland, and Charles Whittlin of the firm's Pittsburgh office, licensed in Pennsylvania.

The gravamen of the complaint by the appellants against the appellees arose out of alleged legal malpractice and breach of contract in the purchase from Bagel Nosh, Inc. (a Delaware corporation whose principal place of business is New York) of certain franchise rights to operate a restaurant and to be permitted to sell other franchise rights to persons desiring to operate restaurants in the Washington metropolitan area and elsewhere. Appellants in their declaration claimed in excess of one million dollars as damages.

Appellees, Baskin and Sears, brought a third-party action against Bagel Nosh, Inc. and appellants subsequently amended their action to include a claim against Bagel Nosh, Inc., seeking rescission of appellants' contract with Bagel Nosh, Inc., third-party appellee, and damages for fraud and interference with appellants' contract rights.

During the preliminary skirmishing in this matter, James Corey, one of the appellants, died. At trial the court permitted Ann Mallinger to proceed with the case both on her own behalf and on behalf of James Corey.

In order to reach the complicated legal questions to be decided by this appeal it will be necessary for us to explore the even more complex factual background of the case.

Appellants, Ann and Arnold Mallinger, while on a business trip in Nevada, were luncheon patrons in a restaurant called Bagel Nosh.[1] Upon inquiring of the owner, they were advised that the restaurant was a franchise operation authorized by a corporation known as Bagel Nosh, Inc. Upon their return to Montgomery County, Maryland, where they lived, the Mallingers requested Mr. Mallinger's sister Rita, who lived in New York, to obtain whatever information was available at the home office of Bagel Nosh, Inc. The Mallingers were furnished with a *pro forma* statement of costs to begin operation of a Bagel Nosh restaurant and with a brief description of the Bagel Nosh operation.

On March 30, 1978, Ann and Arnold Mallinger visited the headquarters of Bagel Nosh, Inc. and met its president, Frank Mauro and its sales manager, James McGuirk. The officers of the corporation gave the Mallingers a detailed exposition of the history of the Bagel Nosh restaurants and a list of the persons to whom franchises for the operation of restaurants had been granted and those who had been designated as area operators of franchises. They pointed out to the Mallingers that area operator franchise agreements gave exclusive right to the entity designated as area operator to sell franchise rights to those persons who sought to operate Bagel Nosh restaurants in the area authorized. The Mallingers were aware of no Bagel Nosh restaurants in existence in the Washington metropolitan area and were assured that the area was still available for negotiation. The price for the grant of a franchise to establish an

---

1. For the benefit of the uninitiated, bagels are made by forming lumps of dough in the shape of doughnuts and then dunking the dough in boiling water. The resulting delicacy produces a bread hard enough on the outside to delight any dentist and an inside which is soft and chewy. The Yiddish word "nosh" has a connotation similar to that of nibbling on finger foods providing more than a snack but less than a full meal. Bagels are frequently the centerpiece of a Sunday morning breakfast consisting of bagels, lox and cream cheese garnished with other ingredients limited only by the imagination of the architect of the sandwich. The Dagwood sandwich popularized in the Blondie cartoons undoubtedly found its inspiration from an inveterate bagel eater.

individual, single restaurant was stated to be $20,000 with area operator rights being available upon payment of an additional $120,000. At the meeting in the Bagel Nosh headquarters the Mallingers were furnished with drafts of the standard franchise agreement and area franchise agreement used by the parent company.

The Mallingers, after their conference, were interested in investing and persuaded Rita Mallinger and a neighbor of the Mallingers, James Corey, to join them in investing in an area franchise of the Bagel Nosh restaurants. Ann Mallinger then called the office of Baskin and Sears, attorneys, located in Hyattsville, Maryland, and arranged an appointment with William Kaplan, one of the attorneys of the firm. Mr. Kaplan was advised of the intention of the parties to invest in the Bagel Nosh franchise and of their need for the formation of an appropriate business entity through which to conduct their business. Mr. Kaplan advised the Mallingers that he had no experience with franchise agreements but that Baskin & Sears had an association with an attorney in Pittsburgh, Charles Whittlin, who was an expert in the field. In addition, he recommended Michael Jackley, one of the members of the firm of Baskin and Sears, as an expert in the formation of business entities. Jackley then drew the necessary documents to form a corporation known as Bagel Enterprises, Inc., in which Ann Mallinger and Arnold Mallinger, Rita Mallinger, and James Corey each became 25% stockholders. Each of the individual investors was required to advance $35,000 to purchase the franchise rights and to provide working capital for the corporation.

Kaplan sent drafts of the franchise and area agreements to Whittlin in Pittsburgh. A week later a meeting with representatives from Bagel Nosh, Inc. was scheduled at the Washington office of Baskin and Sears, to negotiate a number of the contested provisions of the proposed franchise and area franchise agreements. The appellants sought to have Bagel Nosh, Inc. agree that a portion of the funds paid by Bagel Enterprises, Inc. be held in escrow and be released for the gradual payment of fees. Bagel Nosh, Inc. refused

to agree to any escrow agreement. Appellants also sought a recent financial statement from Bagel Nosh, Inc. but Mr. McGuirk declined to supply one because Bagel Nosh, Inc. was "in an expansion mode" and if they supplied one, "it wouldn't look very favorable."

The parties finally agreed that the appellants would have area franchise rights and the exclusive right to sell Bagel Nosh, Inc. franchises in Prince George's County, Montgomery County, Annapolis, Washington, D.C., Alexandria, Virginia and Arlington and Fairfax Counties in Virginia. On May 5, 1978, appellants paid Bagel Nosh, Inc. $120,000 for the area operating rights above mentioned and $20,000 for a franchise to operate a single Bagel Nosh restaurant.

Subsequently, in July of 1978, the appellants learned that the franchise rights they had purchased were sold in violation of Article 56, § 347 of the Maryland Code known as the Franchise Registration Act which had been enacted by the 1977 session of the Maryland Legislature. The Legislature had stated its legislative intent in adopting the Act at § 346(b) as follows:

> It is the intent of this subtitle to provide each prospective franchisee or distributee the information necessary regarding franchises or distributorships being offered. Further, it is the intent of this subtitle to prohibit the sale of franchises if the sale would lead to fraud or a likelihood that the franchisor's or distributor's representations would not be fulfilled, and to protect the franchisor or distributor and franchisee or distributee with regard to their business relationship.

Section 347 stated that it was unlawful after July 1, 1977 to sell or offer any franchise in the State unless the offeror of the franchise were registered under the subtitle. The statute at § 349 required a prospective franchisor to file an application containing the following:

*     *     *     *     *     *

(4) Information concerning the identity and business experience of persons affiliated with the franchisor, as the director may prescribe.

(5) A statement whether any person identified in the offering prospectus:

(i) Has been convicted of a felony, or pleaded nolo contendere to a felony charge, or held liable in a civil action by final judgment if the felony or civil action involved fraud, embezzlement, fraudulent conversion or misappropriation of property; or

(ii) Is subject to any currently effective order of the Securities and Exchange Commission or the securities administrator of any state denying registration to or revoking or suspending the registration of this person as a securities broker or dealer or investment advisor or is subject to any currently effective order of any national securities association or national securities exchange as defined in the Securities and Exchange Act of 1934 suspending or expelling this person from membership in the association or exchange; or

\*  \*  \*  \*  \*  \*

(7) A recent financial statement of the franchisor, together with a statement of any material changes in the financial condition of the franchisor from the date when the statement was issued.

(22) When the person filing the application for registration is a subfranchisor, the application shall include the same information concerning the subfranchisor as is required from the franchisor pursuant to this section.

Section 345(i) defines "subfranchisor" as a person to whom an area franchise has been granted. It is clear that Section 349(22) contemplated registration by both Bagel Nosh, Inc., the franchisor, and Bagel Enterprises, Inc., the area subfranchisor.

Bagel Enterprises, Inc. was incorporated in the period between May and July of 1978. During this time appellants selected a site for their restaurant in Congressional Plaza in

Rockville, Maryland. In addition, they explored the possibility of obtaining an SBA loan and actively solicited the sale of possible franchises to those interested in operating restaurants in the franchise area purchased from Bagel Nosh, Inc.

In July of 1978, the appellants, the appellees, and Bagel Nosh, Inc. first became aware of the Franchise Registration Act. Appellee lawyers admitted they had no knowledge of the existence of the Act when appellants' contract with Bagel Nosh, Inc. was signed. It was in July of 1978 that Jackley for the first time notified appellants that they could not offer or sell franchises until their corporation, Bagel Enterprises, Inc., registered pursuant to the Act. Appellants began the preparation of their own registration statement, rented their own corporate offices and executed a lease for their first restaurant in Congressional Plaza. When Bagel Enterprises, Inc. presented its registration application to the State Franchise Administrator in October of 1978, they were advised that more information about the parent company, Bagel Nosh, Inc., was required before the Bagel Enterprises, Inc. application could be considered.

The Administrator stated that his office would encourage Bagel Nosh, Inc. to make an offer of rescission and restitution "which would bring the parties back to square one," and then, following compliance with Maryland law, the appellants could decide whether or not to go forward.

Appellants, however, were still eager to proceed with their plans. Mr. Jackley advised the group that it seemed possible for Bagel Enterprises, Inc. to register independently of Bagel Nosh, Inc. by not designating Bagel Enterprises, Inc. as a "subfranchisor" on the area operators agreement, so as to escape the effect of the statute. Ann and Arnold Mallinger both testified that Bagel Nosh, Inc., although itself refusing to register, offered to assist them in registering.

Investigation disclosed that both Maryland and Virginia had statutes requiring the registration of all franchisors offering a franchise for sale within the respective states or to a resident of those states. Bagel Enterprises, Inc., before

it could offer franchises for sale in either Maryland or Virginia, would be required to register. The District of Columbia had no such act so Bagel Enterprises, Inc. was not precluded from selling franchises in the District. In addition, the appellants could proceed to open their own restaurant without registering with the State of Maryland.

Sometime in late October and November, Bagel Enterprises, Inc. received information from several sources that various individuals involved with Bagel Nosh, Inc. had been linked to organized crime. They were also told that one of Bagel Nosh, Inc.'s consultants, Thomas Quinn, had been convicted for stock fraud and had been disbarred from the practice of law in New York. In addition, the president of Bagel Nosh, Inc., Frank Mauro, informed them of his own personal bankruptcy and that there were cases pending against Bagel Nosh, Inc. "all over." This information would have been available to appellants before their contracts were signed, if the Registration Act statements had been filed as required. At a meeting on November 24, 1978 with Mr. David Bortz, the State Franchise Administrator, they told of this new information. Mr. Bortz talked of filing suit against Bagel Nosh, Inc. but Bagel Enterprises, Inc. asked for time to negotiate with Bagel Nosh, Inc.

A list of demands was worked up by Bagel Enterprises, Inc. and Mr. Jackley and was presented to Mr. Mauro and Mr. Quinn on December 5, 1978 in Hyattsville. Mr. Quinn became very upset by the demands and made an offer to Bagel Enterprises, Inc. to return the $120,000 in exchange for the area operator rights. As testified to by Mrs. Mallinger, this offer was rejected by Bagel Enterprises, Inc. Negotiations continued but no final agreement was ever reached. Neither Bagel Enterprises, Inc. nor Bagel Nosh, Inc. ever registered.[2] Bagel Enterprises, Inc. was unsuccessful in financing its business and eventually defaulted, suf-

---

2. Although Bagel Enterprises, Inc. never completed registering in Maryland, Bagel Nosh, Inc. eventually did file its disclosure statement.

fering adverse judgments on both the lease for the corporate offices and the restaurant.

During the middle of December, the appellants fired the law firm of Baskin and Sears and retained Lewis Rudnick of the Chicago firm of Rudnick and Wolfe. Although Mr. Rudnick advised Bagel Enterprises, Inc. to do nothing until he had had an opportunity to review the situation, Mrs. Mallinger signed a lease commitment with Congressional Plaza on December 26, 1978.

Through their attorney, Mr. Rudnick, Bagel Enterprises, Inc. finally made a demand on Bagel Nosh, Inc. on January 16, 1979 seeking rescission. Mr. Rudnick was unaware that the group had continued to seek financing for their own franchise restaurant.

Various telephone negotiations with the Bagel Nosh, Inc. attorneys followed and on April 16, 1979, a counter-offer was submitted by Bagel Nosh, Inc. No response was ever made to this offer because by that time the appellants had retained another law firm to file suit on the matter.

Appellants brought this action against the appellee law firm alleging essentially that but for the law firm's negligence in not knowing and informing them of the registration law, appellants would not have paid appellee Bagel Nosh, Inc. $140,000 or otherwise incurred damages. Appellee lawyers brought a third-party action against appellee Bagel Nosh, Inc. Appellants amended over to join Bagel Nosh, Inc. as a defendant, alleging fraud and interference with contract and also seeking rescission. Appellee Bagel Nosh, Inc. generally denied all allegations and denied any liability.

When the case came up for trial before the trial judge and a jury, the court submitted 10 special issues to the jury. The issues submitted and the answers returned by the jury after a full day's deliberation were:

SPECIAL ISSUES

1. Do you find that William Kaplan was negligent?

✓ ___<br>yes   no

2. Do you find that Charles Whittlin was negligent?

$\checkmark$ ____
yes     no

3. Do you find that Michael Jackley was negligent?

$\checkmark$ ____
yes     no

4. If your answer was "yes" to any of the above questions, do you further find that his or their negligence was a proximate cause of the damage to the plaintiffs?

$\checkmark$ ____
yes     no

5. Do you find that the plaintiffs individually or collectively were contributorily negligent?

$\checkmark$ ____
yes     no

6. Do you find that defendant attorneys, acting individually or collectively breached their contract with the plaintiffs?

$\checkmark$ ____
yes     no

7. If your answer to question No. 6 was "yes", do you find that the plaintiffs, individually or collectively, after having learned of the breach, ratified their contract with defendant attorneys and thereby waived their right to sue said defendants individually or collectively for breach of contract?

$\checkmark$ ____
yes     no

8. Do you find that under the evidence, the plaintiffs were entitled to rescind?

$\checkmark$ ____
yes     .no

9. If your answer to question No. 8 was "yes", do you find that the plaintiffs, individually or collectively, after having been advised of their rights to rescind, through their actions waived their rights to rescind and thereby ratified the contract?

$\checkmark$ ____
yes     no

10. After consideration of the evidence, do you find that the plaintiffs are entitled to recover against Bagel Nosh, Inc. on the basis of fraud?

____ $\checkmark$
yes     no

Judgment was entered on behalf of all defendants and it is from that judgment that this appeal was filed. Appellants raise the two following issues to be determined by this appeal:

1. Whether a contract made in violation of a statute designed to protect the public is illegal and void *ab initio* where the statute provides no civil remedies?

2. Whether there was prejudicial error in the trial court's refusal to admit certain evidence?

### 1.

■ Appellants contend that their area operators' agreement and franchise agreement with Bagel Nosh, Inc. were void *ab initio* as a matter of law and that they could not, therefore, have been found to have satisfied the agreements by their subsequent conduct or have waived their right to rescind. The trial court instructed the jury considering the 10 special issues in the following fashion:

You are further instructed as follows on the law of void and voidable contracts. A void contract is one where the law of the state has declared the subject matter of conduct contemplated by the contract as illegal. In such case the contract is void, a nullity and neither party to the contract can act under the contract.

A voidable contract on the other hand is one where one party to the contract engaged in unlawful conduct in entering the contract. The other party is innocent and the subject matter is otherwise lawful. In this case you may find there is nothing in the contract themselves which is illegal and that the law does not prohibit the operation of a franchise. However, the Maryland Franchise Act does state the sale of the franchise without registration is illegal.[3]

---

3. It should be noted that the Maryland Franchise Registration Act originally provided no election of remedies for an abused franchisee. Since the original adoption the Legislature by Section 365 permits

Further, you may find the contracts were voidable at the option of the Plaintiff. If so, they could declare the contracts void and sue for rescission or they could ratify the contracts by further actions under the terms of the contract. If you find that these franchise agreements were unlawful and the plaintiffs were either members of the class that the statute was designed to protect or fraudulently induced to enter into the franchise agreement, this would ordinarily entitle the plaintiffs to rescind. However, because of the nature of the evidence in this case, it is necessary for you to consider whether they ratified the contracts after having been aware of the facts that would have entitled them to rescission.

A voidable contract is defined in Restatement, *Contracts,* § 13 as "one where one or more parties thereto have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract. . . ."

Comment (e) states that:

Where both parties have a power of avoidance the propriety of calling the transaction a voidable contract rather than calling the transaction void, is due to the fact that action is necessary in order to prevent the contract from producing the ordinary legal consequences of a contract; and often this action in order to be effectual must be taken promptly. Moreover, ratification by either party may terminate his power of avoidance.

In 12 Am.Jur. *Contracts* § 447 it is said:

A right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises; it may be waived by continuing to treat the contract as a subsisting obligation. The general rule is that the right to rescind must be exercised within a reasonable time, although there is authority to the effect that the mere question of how much time a party to a

civil remedies and by Section 365A sets up criminal sanctions for willful violations including prison terms up to five years.

contract has permitted to elapse is not necessarily determinative of the right to rescind, the important consideration being whether the period has been long enough to result in prejudice to the other party.

*See Coopersmith v. Isherwood,* 219 Md. 455, 150 A.2d 243 (1959).

It is significant that when the Maryland Franchise Registration Act was adopted in 1977 there were no civil or criminal sanctions imposed by the Act. The only remedy available to appellants was to seek a return of the monies they had paid to Bagel Nosh, Inc. Restatement (Second) *Contracts,* § 198 points out that:

A party has a claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy if

(a) he was excusably ignorant of the facts or of legislation of a minor character, in the absence of which the promise would be enforceable, or

(b) he was not equally in the wrong with the promisor.

It is clear from the evidence that all of the parties with knowledge of this transaction agreed that Bagel Enterprises, Inc. had a right to avoid the contract and seek restitution. In October of 1978, Bagel Enterprises, Inc. was so advised by Bortz, the Franchise Administrator. Bagel Enterprises, Inc. was not willing, however, to cancel the contract and receive restitution. Instead it chose to continue to explore the possibility of proceeding with its own registration. It continued to bargain with Bagel Nosh, Inc. and attempted to secure an extension of its area franchise rights into territory not covered by the original contract. After receiving information of alleged criminal behavior by Bagel Nosh, Inc.'s principals and reporting these allegations to Mr. Bortz, Bagel Enterprises, Inc. declined Mr. Bortz's offer to institute a suit against Bagel Nosh, Inc. to rescind the contract, choosing instead to continue to bargain with Bagel Nosh, Inc. It rejected an offer by Bagel Nosh, Inc. to buy out the area operator's agreement and instead obtained new concessions

and an agreement to register in Maryland by Bagel Nosh, Inc. The appellants made no effort to avail themselves of these concessions, choosing rather to employ new counsel, Lewis Rudnick. He researched the controversy between the parties and reached the legal conclusion that appellants had a right of rescission of its contract with Bagel Nosh, Inc. Bagel Nosh, Inc. again made an additional proposal of settlement but no final agreement was reached because Bagel Enterprises, Inc. had again employed new counsel and instituted civil proceedings.

While these negotiations were proceeding, Bagel Enterprises, Inc., if it had completed its registration independent of Bagel Nosh, Inc. according to the testimony of Mr. Bortz, was in a position to begin operating its franchise agreement in Maryland.[4] It chose not to do so.

Appellants have chosen to ground their right to recover against the appellees solely upon their contention that Bagel Nosh, Inc.'s failure to register made their contract with it void *ab initio*. The Court of Appeals, however, in *McNally v. Moser*, 210 Md. 127, 138, 122 A.2d 555, 561 (1956), said:

> One may not rely on illegality or invalidity where the doing of that said to be forbidden may reasonably be made legal and possible through administrative or judicial action.

Appellants argue that the appellee lawyers did not properly advise them of their rights and obligations once all parties became aware of the requirements of the registration law. If, as they contend, the contracts were void, *no* rights

---

**4.** In their brief, appellants argue that this is not what they wanted when they paid $140,000 to appellee Bagel Nosh, Inc. They had bought an area franchise—the right to sell franchises in their given territory. $120,000 of the $140,000 that appellants gave to Bagel Nosh, Inc. was for the area rights. Indeed, the only reason they even purchased a single franchise right was because the Area Operators Agreement required that one of the first two restaurants in their territory be a "company" unit for which the area operators would be principals.

Appellants themselves had no restaurant experience. A restaurant business is not what they sought.

beyond the recovery of the monies paid by them and any consequential damages were available to Bagel Enterprises, Inc. Appellants were beyond question advised by Mr. Bortz and the several counsel they employed that they had a right to rescind the contract. Once having been so advised it was their obligation to notify Bagel Nosh, Inc. of their intention to rescind within a reasonable time. *See Coopersmith v. Isherwood, supra; Billmyre v. Sacred Heart Hospital of Sisters of Charity, Inc.,* 273 Md. 638, 331 A.2d 313 (1975).

The right to rescind may be waived by "continuing to treat the contract as a subsisting obligation." *Michael v. Towers,* 253 Md. 114, 117, 251 A.2d 878, 880 (1969), quoting *Kemp v. Weber,* 180 Md. 362, 24 A.2d 779 (1942). "If a party who knows the facts which would justify rescission, does any act which recognizes the continued validity of the contract or indicates that he still feels bound under it, he will be held to have waived his right to rescind." *Lazorcak v. Feuerstein,* 273 Md. 69, 76, 327 A.2d 477, 481 (1974). A useful discussion of the choice facing a party who has a right of rescission is found in *Kemp v. Weber, supra* 180 Md. at 366, 24 A.2d 779:

All the authorities hold that such choice must be exercised as soon as the party ascertains the facts, and is informed of the failure on the part of the other party. The reason for this is clear. Having then a knowledge of the facts, he is not deceived. If he is unwilling to take the benefits accrued or accruing under the contract, he has an opportunity to disavow it, get back what he has put out, and place himself in approximately the same position in which he would have been had no contract been made. If he does not do this, but continues receiving the benefits coming to him under the contract, he has affirmed the contract after knowing the facts. He may have been deceived in the first instance, but he is not deceived after he knows. Making his choice after he knows, he must abide by it. [Citations omitted].

■ In giving notice of rescission there is one further duty required of the contract party who seeks to rescind. As the Court of Appeals said in *Lazorcak v. Feuerstein, supra,* 273 Md. at 76, 327 A.2d 477, the giving of notice requires indicating "to the other party at least the intent to restore the parties to the relative positions which they would have occupied if no such contract had ever been made, and this as soon as the disenchanted party learns of the facts. This offer of restoration or tender back must, at a minimum, demonstrate an unconditional willingness to return to the other party both the consideration that was given by that party and any benefits received under the contract." (citations omitted).

It seems clear to us that Bagel Enterprises, Inc. indicated its desire to continue with the contract long after it was aware of its right to seek rescission. It apparently chose to use Bagel Nosh, Inc.'s failure to register as a means to force additional concessions from Bagel Nosh, Inc. We find nothing in the record to indicate that appellants were at any time prepared to surrender the area franchise agreement they purchased from Bagel Nosh, Inc.

The trial in this case proceeded over a period of nine days, testimony was voluminous, special issues were submitted to the jury, and proper instructions given which correctly stated the law. The instructions carefully outlined the various aspects of void and voidable contracts,[5] rescission, tender, ratification, and waiver; and the answers returned by the jury clearly indicated they understood the issues as submitted to them. We find no error in the trial court's refusal to instruct the jury that the contract was void *ab initio* because of Bagel Nosh, Inc.'s failure to register under the Maryland Franchise Registration Act.

---

**5.** By doing so the court implicitly left to the jury a question of statutory construction i.e. whether failure to comply with the statute made the contract void/or voidable. The jury implicitly decided it was voidable. It should have been so instructed by the court as a matter of law; however, the error of submitting this issue to the jury was harmless in light of the result.

2.

■ During the course of trial appellants objected to the exclusion of documents and testimony concerning the relationship between two former franchisees and Bagel Nosh, Inc. In the second count of their declaration against Bagel Nosh, Inc., the appellants alleged fraud by that corporation in that representatives of Bagel Nosh, Inc. made promises they did not intend to keep, failed to disclose certain facts about other franchise agreements still effective in the Washington metropolitan area, and their knowledge of the existence of the Maryland Franchise Registration Act.

Appellants sought to substantiate their allegations of fraud through the testimony of Dr. Joel Ganz and Mr. Allan Kalkstein. These witnesses were permitted to testify that they had had contracts to purchase franchises from Bagel Nosh, Inc. and that the contracts had been rescinded or the parties had agreed to rescind them. The trial judge refused to permit testimony concerning the substance of these disputes with Bagel Nosh, Inc. or the resolution of the disputes. The appellants proffered documents which indicated that Ganz and Kalkstein had each entered into franchise agreements with Bagel Nosh, Inc., that disputes had arisen, and that while settlement agreements had been reached between them, Ganz had not been paid his settlement until several weeks after the agreement between the appellants and Bagel Nosh, Inc., and that Kalkstein had not been paid the sum due him for rescission when this case reached trial. Appellants contended that these facts were intended to establish that Bagel Nosh, Inc. acted fraudulently when it represented to the appellants that the franchise territory was open, while in fact the dispute between Ganz, Kalkstein and Bagel Nosh, Inc. had not been resolved. The trial court found as a fact that the territories were open and undisputed because Ganz and Kalkstein had reached an agreement to surrender any claim in return for Bagel Nosh, Inc.'s promise to refund their money.

■ Appellants also sought to show that Bagel Nosh, Inc. had broken promises to Ganz and Kalkstein and, therefore, had no intention to keep similar promises made to appellants. While evidence of another transaction is irrelevant to a transaction at issue, when fraud is alleged the fraudulent conduct of a defendant in a similar transaction is admissible. *McAleer v. Horsey,* 35 Md. 439 (1872). Maryland recognizes an action for fraud based on fraudulent representations of future intentions. *Appel v. Hupfield,* 198 Md. 374, 84 A.2d 94 (1951). The short answer to this legal argument, however, is that appellants made no proffer of evidence of fraudulent conduct in the dispute involving Ganz and Kalkstein. We find nothing in the record to indicate that the trial judge erred when he refused to admit the documents and further testimony of Ganz and Kalkstein into evidence.

■ Appellants argue further that the trial judge erred when he refused to permit their expert witness, Lewis Rudnick, attorney, to give his opinion whether the conviction of one of the officers of Bagel Nosh, Inc., Thomas Quinn, for felony stock fraud and subsequent disbarment and failure to disclose this information under the Registration Act was relevant to the issue of the lawyer appellees' negligence. As the jury found the lawyers were, in fact, negligent, it is unclear to us exactly what further result the appellants hoped to achieve from the admission of the expert's testimony. We find no harm, if there was error in the court's ruling on this issue. *Blondes v. Hayes,* 29 Md.App. 663, 350 A.2d 163 (1976).

■ Appellants' final evidentiary contention is that the failure of Bagel Nosh, Inc. to comply with the Franchise Registration Act was fraudulent *per se.* They argue that when Mr. Kalkstein sued Bagel Nosh, Inc., the factual details of the suit gave notice to Bagel Nosh, Inc. of, at least, a requirement of registration in the State of Virginia. Kalkstein's suit was filed on April 21, 1978 and was served on Bagel Nosh, Inc. by registered mail on April 24, 1978,

some eleven days before appellants paid the $140,000 to Bagel Nosh, Inc. Appellant contends that Bagel Nosh, Inc., once on notice of the Virginia Act, was required to ascertain what requirements of registration, if any, existed in Maryland and D.C. and to advise the appellants. The failure to do so, they contend, amounted to an act of reckless indifference to the truth, amounting to the equivalent of actual knowledge. *See generally, Bishop v. E.A. Strout Realty Agency, Inc.,* 182 F.2d 503 (4th Cir.1950).

Appellants urge that Kalkstein's suit, or more inclusive testimony about its details, should have been permitted. They also insist that an article which appeared in the "Miami Herald" published on June 1, 1977, should have been admitted into evidence. The article stated in pertinent part as follows:

Bagel Nosh International, Inc. the firm that franchises the restaurants, is in the process of registering in 30 states, according to its president, Frank Mauro.

While, marginally, there may have been some basis for the admission of some portion of the evidence concerning Bagel Nosh, Inc.'s knowledge of the registration requirements, the evidence would not have affected the result of this suit. The jury found the lawyer appellees negligent, but they also found the appellants contributorily negligent. It found the lawyer appellees breached their contract with appellants but that the appellants ratified their contract with the attorneys and waived their right to sue the attorneys for breach of contract. It found the appellants were entitled to rescind their contract and that after having been advised of their right to rescind, the appellants waived their rights to rescind and ratified the contract. It found finally that appellants were not entitled to recover against Bagel Nosh, Inc. on the basis of fraud.

From our review of the record we are convinced that there was ample evidence before the jury from which it could have reached these conclusions and that the case was

submitted to them on correct instructions as to the law. We shall affirm.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.